IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| WILLIAM S. COWART, | : |
| | : |
| Plaintiff, | : |
| | : |
| vs. | : CIVIL ACTION 14-00197-WS-C |
| | : |
| BALDWIN COUNTY | : |
| CORRECTIOMAL CENTER | : |
| MEDICAL DEPARTMENT, *et al.* | : |
| | |
| **Defendants.** | |

### Report and Recommendation

Plaintiff, an Alabama prison inmate proceeding *pro se* and *in forma pauperis* filed a complaint under 42 U.S.C. § 1983.  This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on the motion for summary judgment of Defendants, Baldwin County Correctional Center Medical Department, Dr. Charles D. Sherman, and Carla Wasdin (docs. 14-15, 17-18), and Plaintiff's opposition thereto (doc. 23).  For the reasons stated below, it is recommended that the motion for summary judgment of Defendants Baldwin County Correctional Center Medical Department, Dr. Sherman, and Wasdin be granted and that Plaintiff's action against Defendants be dismissed with prejudice.

I. **Factual Allegations**

From its review of the record, the Court summaries the parties' allegations that are material to the issues addressed in this Report and Recommendation. Plaintiff Cowart suffers from several medical conditions including cirrhosis of the liver, Hepatitis C, and pain due to previous leg and hip injuries, which have left him with an 18 inch rod in his leg and screws in his hip. (Doc. 1 at 3; Doc. 15

at 2). On March 11, 2014, Cowart was transferred from Perry County Jail to Baldwin County Correctional Center ("BCCC") where the BCCC medical staff was alerted to Plaintiff's medical status. (Doc. 15 at 2). The medications and treatment plan Cowart was previously receiving arrived by mail on March 13, 2014, and Dr. Sherman, the physician at BCCC continued Cowart on his regime of 15 mg of Remeron for depression, 600 mg of Ibuprofen for pain, and 20 mg of Prilosec for acid reflux or gastrointestinal complaints. (Id.). Almost immediately upon being booked into BCCC, Cowart began filing medical requests; nearly all requests were for medication modifications:

> On March 13, 2014, Cowart requested his Ibuprofen medication be changed to Tylenol due to stomach irritation. (Doc. 15-4 at 28). Dr. Sherman granted this request the same day he received it. (Id.).
>
> On March 16, 2014, Cowart requested his Ibuprofen medication be changed to Tylenol 650 mg three times a day, that the Prilosec medication be decreased, and that the Remeron medication be increased. (Doc. 15-4 at 29). Dr. Sherman granted these requests, with the exception of only prescribing 500 mg of Tylenol three times a day. (Id.).
>
> On March 19 and 20, 2014, Cowart requested that his Tylenol prescription be doubled. (Doc. 15-4 at 30, 31). Dr. Sherman requested to examine Cowart before granting this request. (Id.).
>
> On March 23, 2014, Cowart requested Gabapentin (or Neurontin) for pain instead of Tylenol or Ibuprofen and an appointment was scheduled with the doctor for Plaintiff to be examined. (Doc. 15-4 at 32). Dr. Sherman saw Cowart on March 25, 2014, and prescribed Gabapentin 400 mg four times a day for pain, as well as a depo-medrol shot for Cowart's sinus complaints. (Doc. 15 at 4).
>
> On March 27, 2014, Cowart requested a vegetarian diet due to stomach problems. (Doc. 15-4 at 34). After a review of Cowart's commissary purchases of meat sticks and hot sauce on March 25, 2014, the medical staff determined a special diet was not indicated.[1] (Id.).

---

[1] Prior to submitting the dietary request change to the medical department, Cowart filed a grievance on March 22 asking to be "put on a no meat diet;" Cowart maintained cirrhosis of the liver and acid reflux made it difficult to digest meat

> On March 31, 2014, Cowart complained of sinus problems despite the previous steroid shot and requested a decongestant, and an appointment was scheduled for Cowart to see the doctor. (Doc. 15-4 at 35). However, Cowart refused the appointment scheduled for him on April 22, 2014 to evaluate his concerns. (Doc. 15 at 6).
>
> On April 6, 2014, Cowart notified the medical staff that his Remeron prescribed was due to expire and requested that it be continued. (Doc. 15-4 at 36). Dr. Sherman renewed the prescription. (Id.).
>
> On April 13, 2014, Cowart requested that his prescription of Gabapentin be increased, and Dr. Sherman increased the pain medication. (Doc. 15-4 at 37).

The medical staff discovered on April 15, 2014, that Cowart filed a grievance and federal lawsuit against them on April 14, 2014, for "denial of medial treatment for cirrhosis of the liver and Hep C," denial of "referral to liver specialist," and denial of "Interferon treatment and the medication" Tramadol, prescribed by his family doctor. (Doc. 15 at 5; Doc. 25-1 at 24). After learning of Cowart's complaints and desires, a referral request for Cowart to be examined by a gastroenterologist was submitted on April 15, 2014, and approved two days later. (Doc. 15-8 at 44, 46).

On May 28, 2014, Cowart received an evaluation by Dr. Jorge Herrera, a gastroenterologist, for his established conditions of Hepatitis C and cirrhosis of the liver. (Doc. 15-6 at 63-64). The specialist made no prescription or treatment changes at the appointment; rather, he ordered laboratory tests and the past medical records for Cowart. (Id. at 67). Cowart received a follow-up

---

products. (Doc. 25-1 at 20). He was advised to notify the medical unit of his request. (Id.). After being denied the dietary change on March 27, Cowart filed a grievance stating he had converted his religion from Baptist to Seventh Day Adventist and requested that he receive a vegetarian tray in compliance with the ordinances of his new faith. (Id.). Cowart filed approximately 13 grievances regarding his dietary needs from March 22 to June 3. (See Doc. 25-1 at 5-7, 18-21, 28, 33).

appointment with the gastroenterologist on July 21, 2014; at which time, Dr. Herrera diagnosed Cowart with "Chronic Hepatitis C Virus" but prescribed no medication or treatment plan; rather, he noted that Hepatitis A and B vaccinations should be considered, recommended routine blood work be done every three months, and Cowart was "cleared to take low doses of Tramadol." (Id. at 68).

Plaintiff Cowart filed this action on April 18, 2013[2] for alleged constitutional violations that occurred from his arrival at BCCC on March 11, 2014 until April 18, 2014. (Doc. 1 at 3, 7). Cowart was transferred from the custody of BCCC in August of 2014. (Court docket entry dated August 27, 2014).

## II. Procedural History

Cowart filed this action seeking a referral to a liver and orthopedic specialist, Interferon treatment, and medication based on the recommendation of specialists. (Id. at 6). Defendants answered the suit and filed special reports, which moved for the special reports to be considered a motion for summary judgment. (Docs. 14-15, 17-18). The Court converted the special reports of Dr. Sherman and Nurse Wasdin, as well as the answer of Baldwin County Correctional Center into a motion for summary judgment. (Doc. 21). Cowart responded to the motion seeking additional relief of monetary damages in the amount of $846.00, $350.00 to cover the filing fee of the lawsuit and $496 for pain

---

[2] Cowart's petition bore a signature date of April 18, 2014, and was received by the Clerk's Office on April 30, 2014. (Doc. 1) Absent evidence to the contrary, the Court assumes that the petition was delivered to prison authorities for mailing on the day that Cowart signed it. See Washington v. U.S., 243 F.3d 1299, 1301 (11th Cir. 2001). Under the "mailbox rule," "a prisoner's pro se § complaint is deemed filed the date it is delivered to prison authorities for mailing." Id.

4

and suffering and admitted that the original demands of his suit had been met.[3] (Doc. 23 at 3). Defendants' motion for summary judgment, along with Plaintiff's objection thereto, is now before the Court for consideration.

### III. Summary Judgment Standard

In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles. The Federal Rules of Civil Procedure grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment. Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986), the Supreme Court held that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . ." However, all of the evidence and factual inferences reasonably

---

[3] Beyond the demand to be seen by a gastroenterologist for treatment of Hepatitis C and cirrhosis of the liver, which appears to be central to Cowart's complaint, he also asks to be examined by an orthopedic physician. (Doc. 1 at 3-4). Cowart received such an evaluation on June 18, 2014. (Doc. 15-7 at 57).
After falling in the shower and injuring his right hand on June 15, 2014, Cowart was taken to the local emergency room. (Id. at 63-69; Doc. 15-8 at 59). He received an x-ray of his wrist which revealed no fracture. (Doc. 15-7 at 60). Cowart was then examined by an orthopedic surgeon for the injury on June 18, where an additional x-ray of his was conducted but revealed no fracture or dislocation. (Id. at 61; Doc. 15-8 at 69). A splint was prescribed for Cowart to wear for two weeks and he was placed in N block in a handicapped cell due to his injury. (Doc. 25-1 at 12). As soon as June 22, however, Cowart submitted a medical request seeking clearance from N block to return to O Block. (Doc. 15-4 at 41). He stated, " I have not worn the splint all weekend" and "I have not had any pain in my hand. . . . there is no reason for me to be housed in the handicapped cell anymore. Please move me back to O-block and retrieve this hand splint." (Id.). When the nursing staff continued to follow the orthopedic doctor's orders and refused to release Cowart, Cowart signed a medical refusal form on June 26, 2014 stating he no longer needed the splint for his injury, he was released from receiving the medical treatment, and released from N block. (Doc. 15-5 at 54; Doc. 25-1 at 12-14).

drawn from the evidence must be viewed in the light most favorable to the nonmoving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1280 (11th Cir. 2004).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by pointing out to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  Id. at 322-25.

Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact. See Stabler v. Fla. Van Lines, Inc., No. 11-0103-WS-N, 2012 WL 32660, *5 (S.D. Ala. Jan. 6, 2012) (citing Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991)).  Summary judgment is proper when, "after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an essential element of that party's case." McDowell v. Brown, 392 F.3d 1283, 1288 (11th Cir. 2004) (citations and internal quotation marks omitted).  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . .  If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (internal

6

citations omitted). "After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." AGSouth Genetics, LLC v. Cunningham, No. 09-745-C, 2011 WL 1833016, *2 (S.D. Ala. May 13, 2011).

IV.  Analysis

    A.  Claim against Medical Defendants Dr. Sherman and Nurse Wasdin

Plaintiff alleges that Defendants violated his Eighth Amendment rights by failing to provide proper medical treatment for his chronic conditions. Cowart states in his complaint:

> I am in constant severe pain in hip and knee, swelling of the left knee, swelling in liver with constant pain in right stomach area, vomiting [sic], nausea, fatigue, dehydration. I am in desperate need of Interferon treatment, proper medications such as 6 months daily injections, 6 month oral tablets. I'm in need of nausea medication, nonnarcotic pain medication (Tramadol) 100 mg-3x a day, (Protonix-1x a day)(Phenergan-3x a day)  This is the medications that my family doctor prescribes that hel[s with all my symptoms.  The Doctor at Baldwin County Corrections Center(Doctor Charles D. Sherman) will not prescribe these medications or refer me to liver specialist or orthopedic specialist. The only medications he will prescribe are only causing more liver damage, Tylenol and Ibuprofen.

(Doc. 1 at 3-4).

The Eighth Amendment provides that, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. "The Eighth Amendment's proscription of cruel and unusual punishments prohibits prison officials from exhibiting deliberate indifference to prisoners' serious medical needs." Campbell v. Sikes, 169 F.3d 1353, 1363 (11th Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). In Sims v. Mashburn, 25 F.3d 980 (11th Cir. 1994), the Eleventh Circuit

7

delineated the objective and subjective portions of an Eighth Amendment claim as follows:

> An Eighth Amendment claim is said to have two components, an objective component, which inquires whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and a subjective component, which inquires whether the officials acted with a sufficiently culpable state of mind.

Sims, 25 F.3d at 983 (citing Hudson v. McMillian, 503 U.S. 1, 8 (1992)).  To meet the objective element required to demonstrate a denial of medical care in violation of the Eighth Amendment, a plaintiff first must demonstrate the existence of an "objectively serious medical need." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003).  A serious medical need is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994), *overruled in part on other grounds by* Hope v. Pelzer, 536 U.S. 730, 739 n. 9 (2002)).  "In either of these situations, the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." Id. (internal quotation marks and citation omitted).

In order to meet the subjective requirement of an Eighth Amendment denial of medical care claim, Plaintiff must demonstrate "deliberate indifference" to a serious medical need.  Farrow, 320 F.3d at 1243.  "Deliberate indifference" entails more than mere negligence.  Estelle, 429 U.S. at 106; Farmer v. Brennan, 511 U.S. 825, 835 (1994).

> The Supreme Court clarified the "deliberate indifference" standard in *Farmer* by holding that a prison official cannot be found deliberately indifferent under the Eighth Amendment "unless the official *knows of* and *disregards an excessive risk to inmate health or*

8

> *safety*; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837, 114 S. Ct. 1970 (emphasis added). In interpreting *Farmer* and *Estelle,* this Court explained in *McElligott* that "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *McElligott,* 182 F.3d at 1255; *Taylor,* 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need").

Farrow, 320 F.3d at 1245-46.

The undersigned finds that while Cowart's chronic Hepatitis C virus and related cirrhosis of the liver constitute serious medical conditions, the record is devoid of any evidence that demonstrates that Dr. Sherman or Wasdin were indifferent to Cowart's medical needs. To the contrary, Cowart's medical records reflect that he was provided medical treatment at BCCC on a regular and consistent basis. (Docs. 15-2; 15-3; 15-4, 15-5; 15-6, 15-7; 15-8, 15-9).

To survive summary judgment, Cowart must produce evidence that Defendants were deliberately indifferent to his medical needs. Plaintiff Cowart alleges that between March 11 and April 14, he "made several medical requests and grievances concerning medical issues and symptoms and the Medical Department was not providing Plaintiff with proper medication or referrals only Ibuprofen and Tylenol, which are not recommended with liver disease. These medications only cause more damage to the liver." (Doc. 23 at 2). Contrary to his allegation, Dr. Sherman and Nurse Wasdin contend that Cowart never requested the treatment of Tramadol or Interferon, nor did he request to be examined by a specialist prior to the filing of his April 13, grievance and subsequent lawsuit. (Doc. 15 at 5; Doc. 17 at 3). A review of the record belies Cowart's claim.

9

Cowart submitted no less than nine medical requests in one month, from March 13 to April 13. (See Doc. 15-4). One request was for a vegetarian tray, one for sinusitis issues, and seven of the requests were medication modifications. (Doc. 15-4 at 28-37). Each of these requests was responded to quickly, either the same day or the following day, and, other than the dietary change, every request was honored. (Id.). Notably, not a single request or grievance prior to the filing of his April 14 grievance and the filing of this complaint details a medical concern other than general pain. Specifically, Cowart never mentions to Defendants, or anyone at BCCC, his desire to see a specialist, for Interferon treatment, or for a Tramadol prescription. Cowart does not disclose the previous methods of successful treatment prescribed by his family physician that are detailed in this § 1983 action. And, Cowart fails to state that any of his conditions are changing or worsening during the time in question. Moreover, Cowart never complains of jaundice, fatigue, itchy skin, swelling of abdomen, nausea, or vomiting which are telltale signs that cirrhosis is progressing and would have alerted Defendants to deterioration of Plaintiff's health or the need for a different treatment plan. See Hepatitis Health Center, http://www.webmd.com/hepatitis/liver-symptoms, (February 4, 2015); Hepatits C, Mayo Clinic, http://www.mayoclinic.org/diseases-conditions/hepatitis-c/expert-answers/hepatitis-c/FAQ-20058533 (February 4, 2015).

Rather than demonstrating deliberate inference, these undisputed facts reveal that Cowart was provided medical treatment and that Defendants tended to each complaint and need with which Cowart presented. The facts of the record are undisputed and do not evidence a genuine issue for trial. Anderson

10

v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted.") (internal citations omitted).

      The allegations of the complaint suggest that Cowart disagreed with the medical treatment provided by Defendants. However, a disagreement over the course of medical care, alone, does not rise to the level of deliberate indifference and cannot support a § 1983 claim. See Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) (whether defendants "should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding" constitutional liability); Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (explaining that a difference in medical opinion between the prison's medical staff and the inmate about the inmate's course of treatment will not support a claim of cruel and unusual punishment); see also Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989) ("When a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation."). The bottom line is that while Cowart is entitled to treatment for his serious medical needs, he is not entitled to direct the course of treatment that he receives. Accordingly, the fact that Cowart was not provided Interferon treatment, Tramadol, or specialist referrals immediately upon his arrival at BCCC does not evidence that Defendants acted with deliberate indifference, particularly when the record is void of any medical complaints indicating a different or more aggressive treatment plan was needed. The Court further notes that as soon as Defendants

became aware that Cowart desired such extensive medical treatment, Cowart was immediately referred to a specialist. (Doc. 15-8 at 44). This too refutes the allegation of deliberate indifference.

Assuming *arguendo* that Cowart asserts a claim of delay of treatment constituting an Eighth Amendment violation, the undersigned finds that Cowart has failed to demonstrate such unreasonable delay in medical treatment as to hold Defendants liable.

"Delay in access to medical attention can violate the Eighth Amendment . . . when it is tantamount to unnecessary and wanton infliction of pain." Hill, 40 F.3d at 1187 (internal citations and quotation marks omitted). "Cases stating a constitutional claim for immediate or emergency medical attention have concerned medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem." Id.

> The "seriousness" of an inmate's medical needs also may be decided by reference to the *effect* of delay in treatment. Where the delay results in an inmate's suffering "a life-long handicap or permanent loss, the medical need is considered serious." An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed. Further, we have held that "[t]he tolerable length of delay in providing medical attention depends on the *nature* of the medical need and the *reason* for the delay." Consequently, delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay.

Hill, 40 F.3d at 1188-89 (internal citations omitted) (footnotes omitted).

With respect to any alleged delay, there is no evidence that there was an unreasonable delay in providing medical treatment to Cowart, or that there was

12

any detrimental effect from any alleged delay in treatment. As noted *supra*, the record is replete with documentation of the regular and consistent medical treatment that was provided to Cowart during his placement at BCCC.[4] (Docs. 15-2; 15-3; 15-4; 15-5; 15-6; 15-7; 15-8; 15-9). The records reflect that for the time period Cowart complains, all nine of Cowart's medical requests were responded to expeditiously, and Dr. Sherman granted every medication request. Furthermore, once a gastroenterologist examined Cowart, no changes were prescribed to his medication or treatment plan evidencing there was no harm or detriment to Plaintiff in any delay that may have arguably occurred in his referral to a specialist. (Doc. 15-6 at 67-68). In light of such, Cowart's claims against Defendants Dr. Sherman and Wasdin are due to be dismissed.

    B.    <u>Claim against Baldwin County Correctional Center Medical Department</u>

Plaintiff Cowart lists "Baldwin Count[y] Corr. Center (Medical Dept.)" as a defendant in the style or case name of his complaint. (Doc. 1 at 1). However, Cowart fails to identify the same defendant as a party in section III of the complaint or make any *specific* allegations against the medical department. (<u>Id</u>. at 4). Courts are to liberally construe the pleadings of *pro se* plaintiffs. <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal

---

[4] Although Cowart has limited the scope of his allegations to March 11 through April 18, 2014 (doc. 1 at 3), the Court notes that Cowart continued to receive proper medical treatment and care subsequent to the filing of this suit. He was seen by a gastroenterologist twice (doc. 15-6 at 67-68), an orthopedic physician twice after injuring his hand, where multiple x-rays were performed and a splint was prescribed (doc. 15-5 at 21-22; Doc. 15-7 at 63-69), and Dr. Sherman continued to respond to Cowart's medical requests and make necessary or desired medication alterations. (Doc. 15-4 at 39-43).

13

pleadings drafted by lawyers...") (citation and quotations omitted).  Nevertheless, "a court may not 'serve as *de facto* counsel for a party' or 'rewrite an otherwise deficient pleading in order to sustain an action.'" Muhammad v. Bethel, 430 F. App'x 750, 752 (11th Cir. 2011) (quoting GJR Invs., Inc. v. Cnty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds*, see Randall v. Scott, 610 F.3d 701, 709 (11th Cir. 2010)).  While "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment," Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995) (en banc) (internal citation omitted), the Court will consider the general allegations made in Cowart's complaint and response to the motion for summary judgment regarding his lack of referrals to specialists and denial of Interferon treatment and Tramadol as claims against the BCCC medical department.

      The medical staff at BCCC, however, is not a legal entity capable of being sued. Simrin v. Correctional Med. Servs., No. Civ. 05-2223 RBK, 2006 U.S. Dist. LEXIS 10555, 2006 WL 469677, at *3 -*4 (D. N.J. 2006) (unpublished) (collecting cases holding that a prison medical staff is not a legal entity subject to suit); Merrell v. Dukes, No. 85-2556, 1985 U.S. Dist. LEXIS 14155, 1985 WL 3566, at * 1 (E.D. Pa. Nov. 5, 1985) (unpublished) (ruling that a prison medical staff is not a suable entity); *cf*. Murphy v. Clarke Cnty. Jail, CA No. 09-0660-WS-C, 2010 U.S. Dist. LEXIS 37037, 2010 WL 1487872, at * 2 (S.D. Ala. 2010) (unpublished) (finding that the Clarke County Jail's nurses department and medical staff were not entities subject to being sued, nor are they are "persons" for § 1983 purposes); Bey v. Pa. Dep't of Corrs., 98 F. Supp. 2d 650, 657 & n. 21 (E.D.Pa. 2000) (dismissing the medical staff because it was a component of a state institution

14

entitled to Eleventh Amendment immunity and, therefore, was not capable of being sued, and was not a "person" for § 1983 purposes); <u>Johnson v. Sheahan</u>, 94 C 618, 1994 U.S. Dist. LEXIS 12724, 1994 WL 494803, at *1 (N.D. Ill. Sept. 8, 1994) (unpublished) (holding that the jail medical staff is "neither a person or entity subject to suit because of the lack of a legal existence"); <u>Jefferys v. Dep't of Corrs.</u>, No. 94 CIV 2942(VLB), 1994 U.S. Dist. LEXIS 17913, 1994 WL 702752, at *1 (S.D.N.Y. Dec. 13, 1994) (unpublished) (finding the jail's medical staff was a vague and ambiguous term, and is not a legal entity capable of being served or sued).

After an examination of federal law and Alabama state law, the Court concludes that defendant Baldwin County Correctional Center Medical Staff is not an entity capable of being sued, nor is it a "person" for § 1983 purposes. Thus, a claim against this defendant is due to be dismissed.

V.  **Conclusion**

Based on the foregoing, it is recommended that the motion for summary judgment of Defendants Dr. Charles Sherman, Nurse Carla Wasdin, and the Baldwin County Correctional Center Medical Department be granted and that Plaintiff's action against Defendants be dismissed with prejudice.

**NOTICE OF RIGHT TO FILE OBJECTIONS**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. <u>See</u> 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(B); S.D. ALA. L.R.72.4. The parties should

note that under Eleventh Circuit precedent, "the failure to object limits the scope of [] appellate review to plain error review of the magistrate judge's *factual findings*." Dupree v. Warden, Attorney Gen., State of Ala., 715 F.3d 1295, 1300 (11th Cir. 2011).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

      **DONE** this 10th day of February 2015.

                                    s/WILLIAM E. CASSADY
                                    UNITED STATES MAGISTRATE JUDGE